IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jermaine Lamar Rutledge, | No. CV-25-01947-PHX-SPL (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Ryan Thornell, et al., | |
| Respondents. | |

**TO THE HONORABLE STEVEN P. LOGAN, UNITED STATES DISTRICT JUDGE:**

Petitioner Jermaine Lamar Rutledge has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I.    SUMMARY OF CONCLUSION.**

In 1999, Petitioner was found guilty of four counts, including first-degree murder. (Doc. 15-1, Ex. B.) Petitioner's habeas petition was due by August 27, 2013, but was not filed until June 5, 2025. *See infra* Part III. The Court concludes that the petition is untimely, equitable tolling is not merited, and Petitioner has failed to demonstrate actual innocence. Therefore, the Court recommends the Petition be denied and dismissed with prejudice.

**II.    BACKGROUND.**

**a.  Facts.**

In its decision on Petitioner's direct appeal of his convictions and sentences, the Arizona Court of Appeals summarized the factual background as follows[1]:

---

[1]    These facts are "presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Brown v. Att'y Gen. for State of Nev.*, 140 F.4th 1069, 1077 (9th Cir. 2025) ("The state court's

Late in the evening of May 12, 1997, childhood friends Ryan Harris and Chase Clayton partied at several Valley nightclubs to celebrate their recent 21st birthdays, with Clayton driving the pair in a 1997 Ford Explorer. While stopped at a red light near 40th Street and Camelback shortly after 1:00 a.m. on May 13th, Harris and Clayton met defendant's brother, Sherman Rutledge, and several other persons, who were on foot. Clayton offered them a ride, and the group ended up at a friend's apartment nearby. Clayton and Sherman Rutledge left the apartment briefly, with Clayton driving the Explorer to an area near 16th Street and Campbell. There, Sherman Rutledge left the vehicle and returned with defendant, then 16-years old. Clayton, Sherman Rutledge, and defendant returned in the Explorer to the friend's apartment, where the group stayed for a short time.

Eventually, defendant, Sherman Rutledge, Clayton, and Harris left the apartment to drive Sherman Rutledge to a nearby park. Clayton was in the driver's seat and Harris in the front passenger's seat. Sherman Rutledge sat in the back seat behind Clayton, and defendant sat behind Harris. After Clayton parked the Explorer in the park, defendant put a knife to Clayton's throat, and the two struggled over the knife. Clayton was able to push the knife away and get out of the Explorer. Sherman Rutledge also got out of the Explorer, and shot Clayton in the back as Clayton ran from the park. Sherman Rutledge also shot Harris, and pulled him from the vehicle. Sherman Rutledge and defendant then drove off in the Explorer.

Clayton was able to make it to a nearby convenience store, where he called police. Officers went to the park, where they found Harris' body a short distance from where the Explorer had been parked. Harris had bled to death. The Explorer was found the next day in Mesa, gutted by fire.

Defendant was charged with the first degree murder of Harris, the armed robbery of Harris, the armed robbery of Clayton, and the attempted first degree murder of Clayton. The jury convicted him as charged. The trial court sentenced him to prison for the rest of his natural life for the murder of Harris, and to 21 years, concurrent, on the remaining three convictions.

(Doc. 15-1, Ex. A, at 6–7) (footnotes omitted). Petitioner was given the maximum sentence on all four of his convictions.[2] (Doc. 15-1, Ex. C, at 76–77.)

---

historical fact findings are presumed correct."). The Court notes, however, that the opinion incorrectly states Petitioner was sixteen years old at the time of the crime. Instead, he was "a few months short of his sixteenth birthday." (Doc. 15 at 2 n.1.)

[2] His counsel sought a sentence with the possibility of parole, but after weighing the relevant aggravating and mitigating factors, the trial court determined that was not appropriate. (*Id.* at 67, 73–76.)

**b. Direct Appeal and Post-Conviction Relief ("PCR") Actions.**

    *i.  Petitioner's Direct Appeal.*

Petitioner's counsel timely appealed his convictions and sentences with the Arizona Court of Appeals. (Doc. 15-1, Ex. A, at 7.) On appeal, Petitioner argued that: (1) the jury was improperly instructed as to accomplice liability; and (2) his conviction for armed robbery was not supported by the evidence.[3] (*Id.* at 11, 15.) The Court of Appeals affirmed Petitioner's convictions and sentences on February 10, 2000. (*Id.* at 17.) He then filed a petition for review with the Arizona Supreme Court that was denied on September 26, 2000. (*Id.* at 3.)

    *ii.  Petitioner's First PCR Action.*

On October 14, 2000, Petitioner filed his first PCR notice (doc. 15-1, Ex. D) and was appointed counsel. (Doc. 15-1, Ex E.) However, counsel was unable to find any grounds for relief and asked that the court allow Petitioner to proceed pro se. (Doc. 15-1, Ex. F.) Petitioner was permitted to do so and was granted an extension of time to respond. (Doc. 15-1, Ex. G.) The proceeding was dismissed on June 8, 2001, as he never filed a petition. (Doc. 15-1, Ex. H.)

    *iii.  Petitioner's Second PCR Action.*

On July 17, 2012, Petitioner filed his second PCR notice and requested appointment of counsel. (Doc. 15-1, Ex. I.) This notice was filed pursuant to the United States Supreme Court's June 25, 2012, decision, in *Miller v. Alabama*, 567 U.S. 460 (2012). Petitioner argued that *Miller* constituted a recent change in the law that allowed him to submit past the original deadline.

On August 27, 2012, the Maricopa County Superior Court dismissed the notice as untimely. (Doc. 15-1, Ex. J.) The court determined that the notice should have been filed no later than November 19, 2000. (*Id.*) The court further held that *Miller* was not applicable in Petitioner's case, stating:

> The defendant is claiming, pursuant to Ariz. R. Crim. P. 32.1(g), that there

---

[3]     Neither of these arguments are at issue in this action.

has been a significant change in the law that if applied retroactively to the defendant's case, it would probably affect the outcome. Specifically, defendant contends *Miller v. Alabama*, ___ U.S. ____ (June 25, 2012), constitutes a significant change in the law that applies to his case. Defendant states that *Miller* held that a juvenile cannot be sentenced to life imprisonment. *Miller* does not place a categorical ban on juvenile life without parole. The Supreme Court ruled out such a sentence as a mandatory requirement in murder cases. Hence, the judge or jury must have the opportunity to consider mitigating circumstances prior to imposing the harshest sentence possible for a juvenile. Defendant sets forth no valid factual or legal basis to support his claim. Accordingly, defendant has failed to demonstrate that *Miller* is a significant change in the law that applies to his case.

(*Id.*) Petitioner did not file a petition for review. (Doc. 1 at 5.)

### iv.   Petitioner's Third PCR Action.

On October 28, 2016, Petitioner filed his third PCR notice and requested appointment of counsel. (Doc. 15-1, Ex. K.) The Superior Court summarized the grounds for petition:

In his current submission, the defendant claims relief based upon a significant change in the law that, if applied retroactively, would alter the case outcome under Arizona Rule of Criminal Procedure 32.1(g). According to Defendant, one such change occurred when the United States Supreme Court decided *Miller v. Alabama*, 132 S. Ct. 2455 (2012). More recently, the Court held that the *Miller* decision, prohibiting mandatory life sentences without parole for juvenile offenders, announced a new substantive constitutional rule that applied retroactively on state collateral review. *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016). The Court clarified that the Eighth Amendment requires more than consideration of "a child's age before sentencing him or her to a lifetime in prison" and permits a natural life sentence only for "the rare juvenile offender whose crime reflects irreparable corruption" as opposed to "transient immaturity." *Id.*

Defendant asserts that he may be entitled to Rule 32.1(g) relief arising from his juvenile status at the time of his offenses. (Notice at 3, Petition at 4) There is no indication that a court has previously addressed whether the crimes reflected irreparable corruption or transient immaturity. . . . In addition, Defendant asserts Rule 32.1(a) claims of ineffective assistance of counsel, the use of perjured testimony, and the violation of a previously undefined right under the law or the constitution. . . . He also asserts an actual innocence claim under Rule 32.1(h).

- 4 -

(Doc. 15-1, Ex. M.) Although the court did not think it likely that Petitioner's sentence would be affected by *Montgomery*, it appointed counsel "[o]ut of an abundance of caution." (*Id.*)

On August 21, 2019, Petitioner's appointed counsel filed a "Petition for Post-Conviction Relief."[4] (Doc. 15-1, Ex. N.) Here, Petitioner asserted only one ground for relief: that *Miller* and *Montgomery* entitled him to a resentencing hearing at which all aspects of his youth at the time of the offense were to be considered. (*Id.* at 126.) The State filed its response on April 1, 2020, asking that the court dismiss the petition. (Doc. 15-1, Ex. O.) It argued Petitioner had not shown his conduct was the result of "transient immaturity," and thus had failed to establish a colorable claim for relief. (*Id.* at 145.) The state court initially rejected the State's position and granted Petitioner an evidentiary hearing.[5]

On August 12, 2021, the State filed a motion asking that the court vacate the pending evidentiary hearing and dismiss the PCR petition. (Doc. 15-2, Ex. Q.) The State argued that the Supreme Court's recent holding in *Jones v. Mississippi*, 593 U.S. 98 (2021) established Petitioner's sentence was constitutional.

The court granted the State's motion on January 12, 2022, in consideration of *Jones*. (Doc. 15-6, Ex. U.) Specifically, the court held that:

> *Jones v. Mississippi*, 141 S.Ct. 1307 (2021), made clear that *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), do not constitute a significant change in the law that would probably overturn the Defendant's natural life sentence. The Court further finds that *Miller* is not applicable to the Defendant's situation because the Defendant's natural life sentence was a discretionary sentence, and not [sic] as a result of a mandatory sentence. The Court further finds that *Jones* implicitly overruled *State v. Valencia*, 241 Ariz. 206 (2016), and that the Defendant is not entitled to an evidentiary hearing for the court to determine whether the Defendant's crimes were the result of transient immaturity or irreparable corruption.

---

[4] The Superior Court originally ordered that the petition be filed no later than January 27, 2017. (Doc. 15-1, Ex. M, at 112.) Because the Superior Court's order in response to the petition did not discuss the matter, this Court will assume it was timely filed.

[5] This order is not in the record before the Court but is referenced in the State's "Motion to Reconsider Ruling Ordering Evidentiary Hearing." (Doc. 15, Ex. Q, at 3.)

> *Jones* clarified that all that is required for a sentencing court is to follow a certain process and consider an offender's youth and attendant characteristics before imposing a parole ineligible sentence. Judge Galati, who sentenced the Defendant, did follow a certain process, and did consider the Defendant's youth and attendant characteristics before imposing a natural life sentence. In short, the Defendant's claims do not present a material issue of fact or law which entitles him to relief.

(*Id.*) In response to this holding, Petitioner filed both a writ of habeas corpus in this Court on June 5, 2025, and a Writ of Certiorari in the United States Supreme Court on April 1, 2025. (Doc. 15-6, Ex. CC.) The Supreme Court denied his petition on November 10, 2025. (Doc. 15-6, Ex. DD, at 185.)

### III.    PETITIONER'S HABEAS PETITION.

On June 5, 2025,[6] Petitioner filed this Petition for Writ of Habeas Corpus. (Doc. 6.) He again raised only one ground for relief: that *Miller* and *Montgomery* entitled him to a resentencing. (*Id.*) Petitioner argues that the trial judge in the original proceeding intentionally disregarded factors that would have otherwise been relevant had Petitioner been tried in juvenile court. (*Id.* at 22.) Petitioner believes this is proof that the attendant circumstances of his youth were not considered at sentencing, in violation of *Miller*.

In their limited response, Respondents argue only that the petition is time-barred under the AEDPA and should be dismissed with prejudice.[7] (Doc. 15.) This petition was filed after the Supreme Court's holding in *Montgomery*—decided on January 25, 2016—but according to Respondents, the petition was due one year after the Court decided *Miller*. (*Id.* at 8.)

In reply, Petitioner argues that *Montgomery* constituted a significant change in the law that permitted him to file a successive petition under Arizona rules. (Doc. 16 at 3.) In his view, the limitations period should begin running after *Montgomery* was decided. Petitioner further argues that, even if the petition is untimely, equitable tolling is warranted.

---

[6]    The petition was initially filed by Petitioner on June 5, 2025. (Doc. 1.) Petitioner was then appointed counsel who filed an amended petition on June 9, 2025.

[7]    Respondents' answer addresses only the issue of timeliness. If the Court rules the petition was timely filed, Respondents have requested that they be given an opportunity to file a supplemental answer. (Doc. 15 at 9.)

(*Id.* at 5.) He believes that he diligently pursued his claims and that extraordinary circumstances exist. (*Id.*) Finally, Petitioner believes that the question of timeliness is at least debatable and therefore a dismissal with prejudice is not appropriate. (*Id.*)

### a. Timeliness.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), persons in custody may file a petition for a writ of habeas corpus if they believe their detention violates the Constitution or other federal law. 28 U.S.C. § 2254(a). Absent statutory or equitable tolling, petitioners have only a one-year statute of limitations to do so. The AEDPA provides four different starting dates, and the limitations period begins to run on the latest of those dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A court must determine whether a petition is timely before it can reach the merits of a case. *Blackman v. Cisneros*, 122 F.4th 377, 381 (2024).

Because this Court agrees with Respondents that the statute of limitations begins when a new constitutional right is recognized—rather than when the right is applied retroactively—it finds these proceedings are untimely.

### b. These Proceedings are Untimely.

#### i. *The Constitutional Right was Recognized When* Miller *was Decided*.

This case is governed by § 2244(d)(1)(C),[8] which states the limitations period for a

---

[8] § 2244(d)(1)(A)—which states that the limitations period begins to run on the date a conviction judgment becomes final—is also relevant to Petitioner's case. However, because in this case the recognition of a new constitutional right provides a later start date,

petition begins to run on the date "the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). Here, the parties' primary disagreement centers on when a constitutional right is properly recognized under § 2244(d)(1)(C). Petitioner believes the right established by *Miller* was recognized when it was made retroactive and therefore argues the limitations period began running the day *Montgomery* was decided. (Doc. 16 at 3.) Respondents acknowledge that *Miller* was made retroactive by *Montgomery* but argue "the starting date for a newly recognized right is the date the right 'was initially recognized,' not when it was made retroactive." (Doc. 15 at 8.)

The Court agrees with Respondents that under § 2244(d)(1)(C), the limitations period began to run on June 25, 2012, the day *Miller* was decided. The plain language of the statute supports this conclusion. § 2244(d)(1)(C) clearly states that the appropriate date is the day the right is "initially recognized." 28 U.S.C. § 2244(d)(1)(C). The Supreme Court has adopted the same rule in the context of a nearly identical statute. *Dodd v. United States*, 545 U.S. 353, 354–55 (2005). In interpreting the proper start date under 28 U.S.C. § 2255(f)(3),[9] the Court rejected the argument that the limitations period began to run on the date the newly recognized right was retroactively applied. *Id.* "What Congress has said . . . is clear: An applicant has one year from the date on which the right he asserts was initially recognized by this Court." *Id.* at 357.

In *Steilman v. Michael*, the Ninth Circuit quoted *Dodd* in applying the same reasoning to a habeas petition involving a *Miller* claim:

> This leaves [Petitioner's] timeliness argument based on *Montgomery* meritless because, as the Supreme Court decided in *Dodd v. United States*

§ 2244(d)(1)(C) is the appropriate provision. *See* 28 U.S.C. § 2244(d) ("The start date shall run from the latest of . . . .").

[9] "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" This language is virtually identical to 28 U.S.C. § 2244(d)(1)(C) except that (d)(1)(C) refers to a "constitutional right" rather than a "right."

. . . the date that a right is made retroactive is irrelevant for statute-of-limitations purposes.

859 F. App'x 123, 125 (2021). Numerous District of Arizona decisions have come to the same conclusion.[10] Given the abundant precedential support, the Court cannot agree with Petitioner that the issue of timeliness is "debatable." These cases make clear that the limitation period under § 2244(d)(1)(C) begins when a right is first recognized by the Supreme Court, not when that right is later applied retroactively.

Petitioner's limitation period thus began on June 25, 2012, when *Miller* was decided. Absent tolling, this petition was to be filed no later than June 25, 2013.

### ii. *Statutory Tolling*.

The limitations period is statutorily tolled while a petitioner's "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A petition is "properly filed" when it is delivered and accepted in compliance with the governing rules of the relevant jurisdiction. *Zepeda v. Walker*, 581 F.3d 1013, 1016 (2009). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed. See *Isley v. Arizona Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir. 2004).

Here, Petitioner filed his second PCR notice on July 17, 2012, 22 days after *Miller* was decided. This tolled the limitation period until the notice was dismissed on August 27, 2012. Petitioner then had 30 days to appeal this decision, but he did not do so. Ariz. R. Crim. P. 33.16. Thus, Petitioner's second PCR proceeding was finalized on August 27, 2012, and his limitations period ended on August 27, 2013. Absent equitable tolling, this petition is untimely.

### iii. *Equitable tolling*.

In limited circumstances, courts may equitably toll the AEDPA's limitations period.

---

[10]    *See, e.g.*, *Guzman v. Shinn*, No. CV-21-01277-PHX-SPL, 2022 WL 21747975, at *4 (D. Ariz. Apr. 8, 2022) ("[T]he date that a right is made retroactive is irrelevant."), *report and recommendation adopted*, No. CV-21-01277-PHX-SPL, 2022 WL 21747983; *Conley v. Shinn*, No. CV-22-00985-PHX-SRB, 2023 WL 142913 at *7 (D. Ariz. Jan. 10, 2023) ("The one-year statute of limitations for habeas claims under *Miller* began to run on June 25, 2012, the date the case was decided.").

A petitioner is entitled to equitable tolling where he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). The petitioner bears the burden of demonstrating that such tolling is warranted. *Blackman*, 150 F.4th at 381. The Ninth Circuit has made clear that this is a difficult standard to meet, and as such, equitable tolling rarely applies. *See e.g.*, *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) ("[E]quitable tolling is unavailable in most cases[.]"); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) ("Equitable tolling is justified in few cases[.]").

"To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011). What constitutes reasonable diligence will depend on the facts of a specific case, but the term will always require that the petitioner have acted with "some regularity" in pursuing his claims. *Smith v. Davis*, 953 F.3d 582, 601 (9th Cir. 2020). Courts do not require that petitioners act with exceptional or maximum diligence. The purpose of the inquiry is simply to determine if an extraordinary circumstance or the petitioner's own actions caused the delay. *Doe*, 661 F.3d at 1012–13.

The Court recognizes that Petitioner has been pursuing his rights diligently. Since his conviction in 1999, Petitioner has filed a direct appeal and three PCRs regarding his case. His second PCR was filed less than a month after *Miller* was decided, and his third a little over nine months after *Montgomery*.[11] He has submitted, albeit unsuccessfully, petitions for review at both the Arizona and United States Supreme Courts. These efforts clearly satisfy *Smith*'s regularity requirement. Accordingly, the Court finds that Petitioner did act with diligence in pursuing his claims. However, because Petitioner is unable to establish that an extraordinary circumstance resulted in the untimely filing of this petition, he is not entitled to equitable tolling.

---

[11] *Miller* was decided on June 25, 2012. Petitioner filed his corresponding PCR 22 days later, on July 17, 2012. *Montgomery* was decided on January 25, 2016. Petitioner filed his corresponding PCR on October 28, 2016, after nine months and three days.

Petitioner has provided the Court with a list of extraordinary circumstances that he believes merit equitable tolling. Unfortunately, none do. Petitioner claims that his access to legal tools was restricted because of the COVID-19 pandemic. Though a global pandemic may no doubt constitute an extraordinary circumstance, the petition was due in 2013, years before it could be affected by COVID-19.

Petitioner also cites evolving law and "the complexity of the constitutional issues involved" as extraordinary circumstances. (Doc. 16 at 5.) Petitioner's claim that the law was too complex or evolving to allow for timely filing is belied by the fact that he filed petitions in the state courts during the relevant time period. A mere 22 days after *Miller* was decided, Petitioner filed a PCR claiming the decision entitled him to a resentencing. The argument he made then is similar to the one he makes now. After the state courts rejected his PCR request, Petitioner still had 343 days to file a habeas petition. He offers no explanation for why he did not do so, despite having properly filed his claim in the state courts. Petitioner cannot now argue that the complexity of the law should grant him additional time in the federal courts when it did not bar him from filing a petition in the state courts. Because he is unable to demonstrate an extraordinary circumstance caused his delay, the Petitioner is not entitled to equitable tolling.

### c. Actual Innocence.

The actual innocence gateway allows a petitioner to have his untimely habeas petition considered on its merits if he can prove his innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To prove actual innocence a petitioner must introduce new evidence, in light of which no reasonable juror could find him guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386.

Here, the actual innocence gateway is not relevant as Petitioner does not assert he is innocent of the crimes he was convicted of. Although Petitioner did initially claim actual innocence in his third PCR notice (doc. 15-1, Ex. M), his counsel did not make that argument when it filed its subsequent "Petition for Post-Conviction Relief." (Doc. 15-1, Ex. N.) The record before the Court indicates that once counsel was appointed, Petitioner

made the choice to move forward with only the *Miller-Montgomery* claim. Further, the habeas petition makes no mention of any new evidence that would indicate Petitioner is actually innocent. Accordingly, the actual innocence gateway does not apply to this matter.

**IV.    MOTION TO STAY.**

Petitioner requests the Court stay this matter because he states he has filed a "Motion for Reconsideration, which is pending" as of June 5, 2025. (Doc. 3 at 2.) Petitioner requests the stay because he is seeking an evidentiary hearing in the state courts. (*Id.*) Regardless of whether the Arizona courts grant his request, the instant habeas petition is untimely. *See Jordan v. Ryan*, 2011 WL 4101517, at *4 (D. Ariz. 2011) (denying request for stay where the petition "was untimely, and the granting of Petitioner's motion for stay and abeyance would not overcome his failure to meet the statute of limitations."). It is therefore recommended the Motion to Stay be denied.

**V.    CONCLUSION.**

The Petition is untimely, and neither statutory tolling, equitable tolling, nor the actual innocence gateway apply to render this matter timely filed. Furthermore, the issue of timeliness is not sufficiently debatable to preclude a motion to dismiss. The record is sufficiently developed, and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011).

Accordingly,

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that the Motion to Stay (doc. 3) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 9th day of March, 2026.

Honorable John Z. Boyle
United States Magistrate Judge